UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALLIED WORLD SPECIALTY INSURANCE COMPANY f/k/a DARWIN NATIONAL ASSURANCE COMPANY, a Delaware corporation,

    Plaintiff,

v.

LAWSON INVESTMENT GROUP, INC., a Florida corporation, CENTRAL FLORIDA PLUMBING SUPPLY, INC. A/K/A CENTRAL FLORIDA SUPPLY, INC., a Florida corporation, WILLIAM E. LAWSON, an individual, and CHARLENE H. LAWSON, an individual,

    Defendants.

_____/

CASE NO. 6:15-CV-1397-RDB-TBS

## AMENDED COMPLAINT

Plaintiff ALLIED WORLD SPECIALITY INSURANCE COMPANY f/k/a DARWIN NATIONAL ASSURANCE COMPANY ("Allied" or "Surety"), sues LAWSON INVESTMENT GROUP, INC. ("Lawson Investment"), CENTRAL FLORIDA PLUMBING SUPPLY, INC. A/K/A CENTRAL FLORIDA SUPPLY, INC. ("Central Florida"), WILLIAM E. LAWSON ("Mr. Lawson"), and CHARLENE H. LAWSON ("Mrs. Lawson") (collectively "Indemnitors") and alleges as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, on the basis of diversity of jurisdiction with an amount in controversy over $75,000 excluding costs, attorneys' fees, and interest.

**VENUE**

2. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 18 U.S.C. §1965, as all Indemnitors reside, are found, have an agent, or transact affairs within this District.

**PARTIES**

3. This is an action for damages in an amount in excess of $75,000, exclusive of costs, attorneys' fees, and pre and post judgment-interest.

4. Allied is, and at all times mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1690 New Britain Avenue, Suite 101, Farmington, Connecticut 06032, and is authorized and qualified to conduct surety business.

5. Lawson Investment Group, Inc., is and at all times mentioned was, a corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 1064 West Highway 50, Clermont, Florida 34712.

6. Central Florida Plumbing Supply, Inc., is and at all times mentioned was, a corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 1064 West Highway 50, Clermont, Florida 34712.

7. William E. Lawson is over the age of 18, is a citizen of the State of Florida, and resides in Clermont, Florida.

8. Charlene H. Lawson is over the age of 18, is a citizen of the State of Florida, and resides in Clermont, Florida.

9. All conditions precedent to the filing of this action have been satisfied or are hereby waived.

## GENERAL ALLEGATIONS

10. On or about March 20, 2013, Indemnitors, jointly and severally, executed and delivered an Agreement of Indemnity in favor of Allied, attached hereto as **Exhibit A** and incorporated by reference and made a part hereof.

11. Allied received, among other things, the written promise of Indemnitors to indemnify and hold Allied harmless from any and all loss, claim, and expense that Allied might sustain as a consequence of executing payment and performance bonds.

12. In particular, under Section 3.2 of the Agreement of Indemnity, the Indemnitors agreed to

> at all times jointly and severally to indemnify and to hold the Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay the Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not the Surety has actually made any payment thereon as of such Due Date.

13. Under Section 3.3 of the Agreement of Indemnity, the Indemnitors agreed to deposit collateral with the Surety to cover liability for losses:

> 3.3 DEPOSIT OF FUNDS – (a) to deposit with the Surety as collateral, by the Due Date and after receipt of the Surety's written demand, the sum equal to an amount determined by the Surety, to cover liability for Loss covered by Section 3.2, as determined by the Surety. At Surety's sole option, such collateral will be in addition to and not in lieu of any other collateral previously provided to the Surety. Further, if an Event of

>Default (as defined in this Agreement below) has occurred, the Surety will be entitled to demand that the Indemnitors place with Surety funds equal to the aggregate penal sum of all then- outstanding Bonds, as such sum is determined by the Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds).

14. The definition of *Loss* under 3.2 of the Agreement of Indemnity is broad and is defined as

>the underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees (including all legal fees and disbursements), interest and expenses of every nature (including premium and fees due-but-unpaid for the issuance and continuance of the Bonds) which the Surety sustains or incurs or becomes liable for by reason of (a) being requested to execute or procure the execution of any Bond; or (b) having executed or procured the execution of any Bond; or (c) the administration of any amendment, waiver or supplement to any Bond; or (d) any Indemnitor's failure to perform or comply with any of the covenants and conditions of this Agreement; or (e) enforcement of, attempted enforcement of, or preservation of rights under any Bond or this Agreement.

15. The Indemnitors have acknowledged that "the failure to deposit with the Surety, by the Due Date, the sum demanded by the Surety as collateral security will cause the Surety irreparable harm for which the Surety has no adequate remedy at law." **See Exhibit A, Agreement of Indemnity 3.3(d).**

16. In reliance on the Indemnitors' execution of the Agreement of Indemnity, Allied issued performance bonds and labor and material payment bonds ("Bonds") on a number of different projects for which Progressive Plumbing, Inc. ("PPI") was the bond principal **See Exhibit B, Bonds**:

a. Bond number D00000007[1] was issued in favor of Kellogg & Kimsey, Inc., as obligee, on a project titled 1800 West End Hotel & MX Development, 1800 West End Ave., Nashville, TN 37203 ("West End"), with a bond penal sum of $1,750,000.

b. Bond number D00000178 was issued in favor of Kellogg & Kimsey, Inc., as obligee, on a project titled Courtyard by Marriott, 4800 Main Street, Jupiter, Florida 33458 ("Courtyard Jupiter"), with a bond penal sum of $635,000.

c. Bond number D00000179 was issued in favor of Kast Construction LLC, as obligee, on a project titled Waterclub on Snell Isle ("Waterclub Snell"), with a bond penal sum of $1,328,250.

d. Bond number D00000181 was issued in favor of Pinkerton & Laws of Georgia, Inc. 1165 Northchase Parkway, Suite 100, Marietta, Georgia 30067, as obligee, on a project titled Plumbing at Westin Jekyll Island, 110 Ocean Way, Jekyll Island, Georgia 31527 ("Westin Jekyll Island"), with a bond penal sum of $1,469,918.

e. Bond number D00000182 was issued in favor of The Evergreen Corporation dba Evergreen Construction, as obligee, on a project titled Hyatt Place Columbia, SC – Plumbing – Subcontract No. 15-49.100 ("Hyatt Place"), with a bond penal sum of $730,800.

f. Bond number D00000183 was issued in favor of D&D Construction Services of Orlando, Inc., as obligee, on a project titled Concord Orlando

---

[1] For each project, one bond number was assigned to both the performance bond and labor and material payment bond for that particular project.

    Courtyard, Florida – Plumbing ("Courtyard Orlando"), with a bond penal sum of $615,000.

  g. Bond number D00000185 was issued in favor of D&D Construction Services of Orlando, Inc., as obligee, on a project titled Madeira Beach Courtyard, FL – Plumbing ("Courtyard Madeira Beach"), with a bond penal sum of $494,990.

  h. Bond number D00000186 was issued in favor of The Evergreen Corporation dba Evergreen Construction, as obligee, on a project titled Hyatt House at Downtown Atlanta, Georgia – Plumbing ("Hyatt House"), with a bond penal sum of $978,000.

  i. Bond number D00000187 was issued in favor of WELBRO Building Corporation, 2301 Maitland Center Parkway, Suite 250, Maitland, Florida 32751, as obligee, on a project titled Residence Inn by Marriott – Ornage & 50 in Orlando, FL – Plumbing Systems ("Residence Inn Orlando"), with a bond penal sum of $996,200.

17. PPI began to perform on each of its contracts. In the course of performance, numerous persons or entities had supplied PPI with materials, labor or both for the performance of the various contracts. But PPI was unable to continue and defaulted on its obligations including the failure to pay for labor, material or both resulting in a default under the subcontracts, Bonds, Agreement of Indemnity or any combination thereof.

18. An event of default as defined under Section 5.2 of the Agreement of Indemnity includes any abandonment, breach of or failure, refusal or inability to perform, any contract referred to in the Bonds, or of any breach of any said Bonds, the failure to pay

the bills or other indebtedness in connection with the performance of any contract covered by the Bonds, and any breach of the indemnitors' covenants.

19. As a result of PPI's default, these persons or entities asserted claims and demands for performance or payment against Allied under the terms of its performance or labor and materials payment bonds.

20. Allied consequently became bound under the terms of its performance or labor and material payment bonds to ensure that all performance or payment bond claimants with valid claims were compensated. Allied was compelled to employ counsel and incur costs in investigating, processing, and otherwise settling their claims and demands.

21. After conducting a reasonable and appropriate investigation concerning the subject claims and having deemed such claims valid, Allied was obligated to and did pay on the following bonds in the amounts listed:

    a. On bond number D00000007 for the West End project, the Surety paid a sum total of $141,046 to four subcontractors: Hajoca Corp. dba Hughes Supply, $77,914.11; Ferguson Enterprises, Inc., $56,008; Labor Finders TN, $3,416.70; and Barnes Plastic Piping, Inc., $3,707.65.

    b. On bond number D00000182 for the Hyatt Place project, the Surety paid a sum total of $121,096.40 to two subcontractors: Hughes Supply, $89,113.15 and Orlando Winnelson Co., $31,983.25.

    c. On bond number D00000183 on the Courtyard, Orlando project, the Surety paid a sum total of $92,501.09 to two subcontractors: Neff Rental, LLC, $1,982.20 and Hughes Supply for $11,203.51 and $79,315.38.

    d. On bond number D00000185 for the Courtyard Madeira Beach project,

the Surety paid a sum total of $67,764.25 to two subcontractors: Ferguson Enterprises, Inc., $22,260.48 and Orlando Winnelson, Co., $45,503.77.

e. On bond number D00000186 for the Hyatt House project, the Surety paid a sum total of $147,384.38 to four subcontractors: Hughes Supply, $67,152.88; Neff Rental, LLC, $8,516.04; Ferguson Enterprises, Inc., $67,407; and Trillium construction, $4,308.36.

f. On bond number D00000187 for the Residence Inn project, the Surety paid a sum total of $121,804.75 to three subcontractors: Ferguson Enterprises, $18,712.69; Orlando Winnelson Co., $57,798.24; and Hughes Supply, $45,293.82.

22. In addition, the Surety has incurred loss-adjusting expenses exceeding $88,000 for which Indemnitors are fully responsible, and which number is expected to increase.

23. Allied has also incurred unallocated loss adjustment expenses exceeding $35,000 for which the Indemnitors are responsible, and which number is expected to increase.

24. These losses and the threat of future losses prompted Allied to send a collateral demand letter to PPI and the Indemnitors on or about March 23, 2015 demanding the deposit of $750,000 in cash or certified funds by March 31, 2015. **See Exhibit C, March Collateral Demand Letter.** PPI and the Indemnitors ignored Allied's collateral demands and failed to provide the collateral.[2]

25. Since March 2015, the Surety has calculated with reasonable certainty further loss

---

[2] On July 9, 2015, a promissory note for $752,107.33 was signed by Progressive Plumbing, Inc., Progressive Services, LLC, Gracious Living Design Center, Inc., the Indemnitors, and French/Lawson Investment Group, LLC. The first three entities, Progressive Plumbing, Inc., Progressive Services, LLC, and Gracious Living Design Center, Inc., all filed for bankruptcy on August 24, 2015. The promissory note is currently in default.

exposure of $1,163,661 in the following amounts on the following projects:

    a. West End  (Bond D00000007) - $309,663

    b. The Water Club at Snell Isle (Bond D00000179) - $6,860

    c. Westin Jekyll Island (D00000181) - $42,766

    d. Courtyard Madeira Beach (D00000185) - $5,672

    e. Hyatt House (D00000186) - $797,522[3]

26. This additional loss exposure compelled the Surety to send a second collateral demand letter to PPI and the Indemnitors on August 6, 2015 for an additional $750,000 due by August 11, 2015 bringing the sum total of collateral demands to $1,500,000.  **See Exhibit D, August Collateral Demand Letter.** PPI and the Indemnitors ignored Allied's second collateral demand and failed to provide the collateral.

27. Each of the Indemnitors materially breached and defaulted upon their obligations under the Agreement of Indemnity by failing or refusing to indemnify and reimburse the Surety for the losses paid and by failing or refusing to indemnify and reimburse the Surety for its loss adjusting expenses.

28. The Indemnitors, joint and severally, owe the Surety the principal amount of $1,730,745.87, together with loss adjustment expenses, unallocated loss adjustment expenses, prejudgment interest from the date of each disbursement, and any and all losses, costs, expenses, and attorneys' fees, incurred after the filing of this action, all of which the Indemnitors are also liable, jointly and severally.

29. Allied has engaged the services of the undersigned attorney and has agreed to pay its attorney reasonable attorneys' fees for his professional services with regard to this

---

[3] On or about September 25, 2015, Evergreen issued a demand for payment of $797,522 to Allied and threatened a claim of bad faith should Allied refuse to pay. **See Exhibit E, Evergreen letter**.

matter, and has and will incur costs and expenses in this action, all of which the Indemnitors are liable, jointly and severally, and responsible for same pursuant to the Agreement of Indemnity.

## COUNT I – BREACH OF INDEMNITY AGREEMENT

30. Allied realleges and incorporates by reference Paragraphs 1 through 29.

31. The Indemnitors entered into an Agreement of Indemnity with Allied on or about March 20, 2013.

32. The Agreement of Indemnity provides that the Indemnitors, joint and severally, will indemnify, reimburse, and exonerate Allied for any and all liability and losses incurred.

33. The Indemnitors breached the Agreement of Indemnity by failing to indemnify, reimburse, or exonerate Allied for the losses it has sustained, in the discharge of its obligations as surety, in the payment of claims made against bond numbers D00000007, D00000179, D00000181, D00000182, D00000183, D00000185, D00000186, and D00000187.

34. Allied has performed all conditions to be performed on its part under each Bond and under the Agreement of Indemnity.

35. As a direct result of Indemnitors' breach of the Agreement of Indemnity, Allied has suffered damages exceeding $1,500,000.

WHEREFORE, Allied World Specialty Insurance Company respectfully requests entry of an order awarding Allied damages, costs, expenses, pre-judgment interest, attorneys' fees and costs, and any such further relief the Court deems just and proper.

CASE NO. 6:15-CV-1397-RDB-TBS

## COUNT II – SPECIFIC PERFORMANCE

1. Allied realleges and incorporates by reference Paragraphs 1 through 29.

2. Allied issued Bonds on behalf of Progressive Plumbing, Inc. at the request of the Principal and Indemnitors.

3. Allied will incur losses and expenses by virtue of and as a direct consequence of the issuance of the Bonds and in satisfying Allied's obligations thereunder.

4. Allied's estimated monetary exposure for losses under the Bonds exceeds $1.5 million. Allied issued two letters to the Indemnitors each letter demanding that the Indemnitors deposit collateral in the amount of $750,000. The first letter was sent on March 23, 2015, and the second on August 6, 2105. The Indemnitors ignored both collateral demands and nothing was deposited.

5. In Section 3.3(d) of the Agreement of Indemnity, the Indemnitors acknowledge that the failure to deposit collateral will cause the Surety irreparable harm for which there is no adequate remedy at law and that the Surety will be entitled to specific performance of the Indemnitors obligation to deposit with the Surety the sum demanded.

6. Allied's remedy at law is inadequate in that Allied is exposed to liability that is not liquidated at this time.

WHEREFORE, Allied respectfully requests that the Court enter judgment compelling Indemnitors to specifically perform pursuant to the terms of the Agreement of Indemnity by indemnifying Allied for all losses, expenses, costs and fees incurred and depositing with Allied an amount determined by Allied sufficient to discharge any anticipated loss.

### COUNT III - QUIA TIMET

7. Allied realleges and incorporates by reference Paragraphs 1 through 29.

8. This is an action for quia timet seeking equitable relief.

9. Indemnitors are obligated under the doctrine of quia timet to reimburse Allied for all losses and expenses that will be incurred as a consequence of having issued the Bonds.

10. The obligee of the Hyatt House Atlanta (D00000186) has made a claim on the Hyatt House Bond of $797,822, a number that is expected is increase.

11. Losses are also expected on West End (Bond D00000007) in the amount of $309,663, The Water Club at Snell Isle (Bond D00000179) in the amount of $6,860, and Westin Jekyll Island (D00000181) in the amount of $42,766.

12. Allied will be called upon in the near future to pay a debt, the exact amount of which has yet to be determined.

13. Allied provided notice to, and demanded indemnity, reimbursement, and exoneration under the terms of the Agreement of Indemnity from the Indemnitors, requiring them to post collateral sufficient to defray losses and expenses in connection with the Bonds.

14. Indemnitors have failed to satisfy their obligations under the Agreement of Indemnity by refusing to exonerate or otherwise post funds with Allied sufficient to cover the losses and expenses incurred by Allied. Unless the assets of Indemnitors are provided to Allied as collateral, Allied will not be adequately paid, secured or collateralized for potential obligations prior to making any necessary and appropriate payments.

15. By virtue of the Agreement of Indemnity and the common-law and equitable doctrine of quia timet, Allied is entitled to have the Indemnitors post funds or other

security with Allied that is sufficient to cover the bond losses and claims of the obligees and claimants under the Bonds.

16. In the absence of the equitable relief sought herein, Allied will be prejudiced because it will be required to advance further funds in connection with claims on the Bonds. Allied is fearful and apprehensive that Indemnitors (a) are or will become financially unable to pay any amounts that may be found owing for which Allied may be liable and its expenses (including attorneys' fees); or (b) will, based upon the refusal to exonerate Allied in accordance with its demands, sell, transfer, dispose or, otherwise, conceal their assets.

17. Unless the relief in the nature herein requested or its equivalent is granted, Allied's equitable right of quia timet will be forever lost, depriving Allied of adequate security for its obligation to make payments to the obligees and claimants under the Bonds or, unless the equitable relief requested below is granted, Indemnitors are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge Indemnitors' obligation to exonerate Allied.

WHEREFORE, Allied respectfully request that the Court enter judgment against Indemnitors for damages in excess of $1 million, plus costs, interest, and attorneys fees and ordering Indemnitors to immediately post collateral with Allied in the amount of $1,163,661 for anticipated losses and expenses in connection with the projects for which Allied is or may be liable under the Bonds.

## COUNT IV – BREACH OF PROMISSORY NOTE

18. Allied realleges and incorporates by reference Paragraphs 1 through 29.

19. On or about July 8, 2015, the Indemnitors signed a promissory note in favor of Allied in the amount of $752,107.33.

20. The terms of the note required monthly payments of $2,977.09 for six consecutive months followed by payments of $7,885.68 for 53 consecutive months thereafter. A balloon payment of $465,117.26 is due on the 60th and final payment of the note.

21. The Indemnitors were required to make each payment by the first of every month.

22. It is now November 11, 2015 and the Indemnitors have yet to pay the November 1, 2015 payment, placing the promissory note in default. [4]

23. Allied has been damaged by not receiving the scheduled promissory note payments.

24. Allied has the contractual right under the note to accelerate and make immediately due all sums of principal and interest under the note

WHEREFORE, Allied World Specialty Insurance Company respectfully requests entry of an order accelerating and making immediately due the principal and interest payments under the note, awarding Allied damages, costs, expenses, pre-judgment interest, attorneys' fees and costs, and awarding any such further relief the Court deems just and proper.

---

[4] The September and October 2015 payments were also late in that the checks were not delivered to Allied until on or about October 14, 2015.  Under the terms of the Bankruptcy Court's October 1, 2015 order, the September and October 2015 payments were due by October 6, 2015.  Allied accepted the late payments without waiving any of its rights.

Dated: November 11, 2015

                Respectfully submitted,

                /s/Jonathan P. Cohen
                Jonathan P. Cohen
                Florida Bar No.: 11526
                **Jonathan P. Cohen, P.A.**
                500 E. Broward Blvd.
                Suite 1710
                Fort Lauderdale, FL 33394
                (954) 462-8850
                (954) 848-2987 -fax
                jcohen@jcohenpa.com
                service@jcohenpa.com