**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ALLIED      WORLD      SPECIALTY                    CASE  NO.  6:15-CV-1397-RDB-
INSURANCE COMPANY f/k/a DARWIN                      TBS
NATIONAL ASSURANCE COMPANY,
a Delaware corporation,

       Plaintiff,

       v.

LAWSON  INVESTMENT  GROUP,  INC.,  a
Florida  corporation,  CENTRAL  FLORIDA
PLUMBING     SUPPLY,     INC.     A/K/A
CENTRAL   FLORIDA   SUPPLY,   INC.,   a
Florida corporation, WILLIAM E. LAWSON,
an individual, and CHARLENE H. LAWSON,
an individual,

       Defendants.

_____/

**PLAINTIFF ALLIED WORLD SPECIALITY INSURANCE COMPANY'S
MOTION FOR PRELIMINARY INJUNCTION, INCORPORATED MEMORANDUM
OF LAW AND REQUEST FOR HEARING**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Allied World

Specialty Insurance Company ("Allied" or "Surety"), by and through counsel, respectfully

moves this Honorable Court to enter a preliminary injunction against Defendants Lawson

Investment Group, Inc., Central Florida Plumbing Supply, Inc., William E. Lawson, and

Charlene H. Lawson (collectively, the "Indemnitors") compelling them to deposit collateral

security with Allied in an amount sufficient to discharge any claims that have been asserted

against Allied by reason of its execution of surety bonds on their behalf, which, at a minimum,

currently equals $1,611,069.94. As grounds for this Motion, Allied will demonstrate the following:

1.      As an inducement for Allied's issuance of surety bonds on their behalf, the Indemnitors executed an Agreement of Indemnity.

2.      Pursuant to the Agreement of Indemnity, the Indemnitors jointly and severally agreed to the following: [1]

   a.   Indemnify and hold Allied harmless for any liability for any Loss, including attorneys' fees and costs, and in connection thereto, pay for all losses specified or described in Allied's notice by the Due Date, which is the fifth business day after the receipt date of the written demand, **whether or not Allied actually made payment at the time of the due date**; (Emphasis added)

   b.   Payment of interest on all overdue amounts from the Due Date up to the date of actual payment;

   c.   Payment of the annual premium for such bond until satisfactory evidence of termination of liability shall be furnished to Allied;

   d.   After receipt of Allied's written demand, and by the Due Date, deposit collateral with Allied in an amount determined by Allied to be sufficient to cover all Losses.

---

[1] Progressive Plumbing, Inc., Progressive Services, LLC, and Gracious Living Design Center, Inc. were also indemnitors but this case was stayed against them after each filed for bankruptcy protection on August 24, 2015.

3.      Induced by and in reliance upon the Indemnitors' execution of the Agreement of Indemnity, Allied issued nine performance bonds, and nine labor and material payment bonds (collectively, the "Bonds") on behalf of the Indemnitors.

4.      By reason of having executing the West End and Hyatt House Bonds on the Indemnitors' behalf, claims have been asserted against Allied in excess of $1,611,069.94.

5.      The West End and Hyatt House claims have not been liquidated and are currently being litigated.  Although no payments have been made on either of these claims, they both pose significant loss exposure to Allied.

6.      This loss exposure on the West End and Hyatt House bonds is separate and distinct from prior losses suffered by Allied on the Bonds, which have since been liquidated and memorialized by a promissory note secured by collateral in the amount of $752,107.33.  Allied does not seek relief from this Court regarding the prior liquidated loss.

7.      The prior liquidated loss does not merge with the new loss exposure.  The Agreement of Indemnity executed by Indemnitors in favor of Allied remains in full force and effect.

8.      Pursuant to the Agreement of Indemnity, Allied demanded that the Indemnitors deposit collateral security on August 6, 2015, in the amount of $750,000 with Allied regarding the new loss exposure on the West End and Hyatt House bonds, which are now being litigated in Florida State Court, Bankruptcy Court in Florida, Tennessee State Court, Georgia State Court, and arbitration in Georgia.

9.  However, despite Allied's demand, the Indemnitors have breached the Indemnity Agreements by refusing and/or failing to deposit **any** collateral security with Allied.

10. The Indemnitors' contractual obligation to deposit collateral security is enforceable under the terms of the Agreement of Indemnity by specific performance; Allied possesses no adequate remedy at law in relation to the Indemnitors' failure to deposit collateral security and courts throughout the United States have held that such collateral security provisions are specifically enforceable.

11. Allied is entitled to the entry of a preliminary injunction compelling the Indemnitors to deposit collateral security with Allied in an amount sufficient to discharge any claim against Allied because

    (a) Allied will likely succeed on the merits of its claim for specific performance of the Indemnitors' obligation to deposit collateral security under the Agreement of Indemnity.

    (b) Allied will suffer irreparable harm if a preliminary injunction is not issued as it will be deprived of its bargained-for right to receive and hold collateral security during the pendency of this Litigation.

    (c) issuance of a preliminary injunction will not cause substantial harm to others if issued.

    (d) the issuance of a preliminary injunction will serve the public interests of recognizing and enforcing the plain and unambiguous language of the

Agreement of Indemnity, as well as instilling confidence in the surety industry.

12.      In support of this Motion, Allied relies upon a Memorandum of Law and exhibits.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ALLIED WORLD SPECIALTY INSURANCE COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

## I.      INTRODUCTION & SUMMARY OF ARGUMENT

Allied seeks the entry of a preliminary injunction compelling the Indemnitors to deposit collateral security with Allied in an amount sufficient to discharge the claims that have been asserted against Allied by reason of its execution of surety bonds at the Indemnitors' request, which, at a minimum, currently equals or exceeds $1,611,069.94.  As explained in more detail below, the Indemnitors executed an Agreement of Indemnity as an inducement to Allied's execution of surety bonds on behalf of Progressive Plumbing, Inc. ("Progressive" or "Principal").  Pursuant to the Agreement of Indemnity, the Indemnitors jointly and severally agreed to "pay [Allied] for all Losses specified or otherwise described in [Allied]'s notice, no later than close of business on the Due Date with respect to such notice, whether or not [Allied] has actually made any payment thereon as of such Due Date." **(Exhibit, A, Agreement of Indemnity, ¶3.2)**. The Agreement of Indemnity also expressly states, "[Allied] will have the right to use the collateral, or any part thereof, in payment or settlement of any liability, Loss or expense for which the Indemnitors are or would be obligated to indemnify [Allied] under the terms of this Agreement."  **(Exhibit A, Agreement of Indemnity, ¶3.3(c))**

In reliance upon the Indemnitors' execution of the Agreement of Indemnity, Allied issued nine performance bonds and nine labor and material payment bonds on the Principal's behalf for various projects. Claims have been submitted by the general contractors/bond obligees on two of the bonded projects.   The Evergreen Corporation dba Evergreen Construction ("Evergreen") submitted a claim for $797,522 on the Hyatt House @ Downtown Atlanta, Georgia project ("Hyatt House") and Kellogg & Kimsey ("Kellogg") submitted a claim for $813,547.94 on the 1800 West End Hotel & MX Development, 1800 West End Ave., Nashville, TN 37203 project ("West End").   Both claims remain unliquidated and in litigation. The Evergreen claim is pending in the U.S. Bankruptcy Court for the Middle District of Florida, case number 6:15-bk-00145-KSJ, in the Superior Court of Fulton County, State of Georgia, case number 2015-CV-268401, and in arbitration in Georgia before the American Arbitration Association.  The Kellogg claim is pending in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, case number 2015-CA-002631-NS and in the Chancery Court for the State of Tennessee Twentieth Judicial Circuit, Davidson County, case number15-699-I .

The Indemnitors have breached the Agreement of Indemnity by failing to comply with Allied's demands that they deposit collateral security in the amount of $750,000.

Through its Complaint, Allied seeks, *inter alia*, specific performance of the Indemnitors' obligation to deposit collateral security in an amount sufficient to discharge the claims that Evergreen and Kellogg have asserted against Allied by reason of its execution of bonds at the Indemnitors' request.   Allied is entitled to specific performance of the collateral security provision contained in the Agreement of Indemnity because Allied possesses no adequate remedy at law for the Indemnitors' breach of that provision.

More importantly, for purposes of this Motion, Allied is also entitled to a preliminary injunction compelling the Indemnitors to deposit collateral security with Allied in an amount sufficient to discharge Evergreen's and Kellogg's claims.  Because Allied possesses no adequate remedy at law for the Indemnitors' breach of collateral security provisions contained in the Agreement of Indemnity, Allied will likely succeed on the merits of its claim for specific performance of the Indemnitors' obligation to deposit collateral security with Allied. Furthermore, Allied will suffer irreparable harm if a preliminary injunction is not issued because it will be deprived of its bargained-for right to receive and hold collateral security pending the resolution of the claims that have been asserted (or may later be asserted) against Allied.  The issuance of a preliminary injunction will not cause substantial harm to others.  Moreover, the issuance of a preliminary injunction will also serve the public interests of enforcing the plain and unambiguous language of the Agreement of Indemnity, as well as encouraging confidence in the surety industry.

Therefore, Allied respectfully moves this Honorable Court to enter a preliminary injunction compelling the Indemnitors to deposit collateral security with Allied in an amount sufficient to discharge the claims that Evergreen and Kellogg have asserted against Allied by reason of its execution of surety bonds on the Principal's behalf, which, at a minimum, currently equals or exceeds $1,611,069.94.

## II.    STATEMENT OF RELEVANT FACTS

**A. Pursuant to the Agreement of Indemnity, the Indemnitors agreed to pay Allied, upon demand, an amount sufficient to discharge any claim asserted against Allied by reason of executing surety bonds at their request, which Allied may use to pay such claim or it may hold as collateral security against loss.**

As noted above, the Indemnitors executed an Agreement of Indemnity on or about March 20, 2013, as an inducement for Allied to issue surety bonds on the Principal's behalf **(Exhibit B, Affidavit of James Keating, ¶4)**.  Pursuant to the Agreement of Indemnity, as more fully set forth therein, the Indemnitors jointly and severally agreed to, *inter alia*, pay to Allied, upon demand, an amount sufficient to discharge any claim that has been asserted against Allied by reason of executing surety bonds on the Principal's behalf.   Specifically, the Agreement of Indemnity provide, in pertinent part:

Each Indemnitor hereby agrees and covenants with [Allied] as follows:

\* \* \*

a.  3.2 INDEMNITY - at all times jointly and severally to indemnify and to hold the Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay the Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not the Surety has actually made any payment thereon as of such Due Date.

b.  3.3 DEPOSIT OF FUNDS - to deposit with the Surety as collateral, by the Due Date and after receipt of the Surety's written demand, the sum equal to an amount determined by the Surety, to cover liability for Loss covered by Section 3.2, as determined by the Surety.

c.  [3.3](b) [I]f Indemnitors fail to pay in full the amount demanded pursuant to this Agreement on the Due Date, Indemnitors will pay Interest on such overdue amount from the Due Date up to the date of actual payment to the Surety.

The Agreement of Indemnity further provides:

a.  [Allied] is granted the option to adjust, settle, or compromise any Claim, demand, suit or judgment with respect to any Bond in [Allied's] sole discretion.

b.  4.3 PAYMENTS. In the event of any Loss payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and Indemnitors, the Surety will be entitled to charge for any and all

disbursements made by it in good faith concerning the matters contemplated in this Agreement under the belief that it is, or was, or might be liable for the sums and amount so disbursed that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed; and that the vouchers or other evidence of any such payments the Surety made will be prima facie evidence of the fact and amount of the Surety's liability.

c.   Immediately upon receipt of Surety's written request for its release and discharge from any Bond (or bonds), Indemnitors will use their best efforts to cause the Surety to be fully and completely released and discharged from such Bond(s) and from all liability by reason of such Bond(s). (boldface and italics removed).

**B. In reliance upon the Indemnitors' execution of the Agreement of Indemnity, Allied issued a Performance Bond and a Labor and Material Payment Bond on behalf of the Principal on nine projects.**

Allied issued nine separate performance and labor and material payment bonds on behalf of the Principal in consideration of the Indemnitors' execution of the Agreement of Indemnity on the following projects **(Exhibit B, Keating Affidavit, ¶ 4)**:

| Bond Number | Project | Obligee | Penal sum |
|---|---|---|---|
| D00000007 | 1800 West End Hotel & MX Development, 1800 West End Ave., Nashville, TN 37203 | Kellogg & Kimsey, Inc. | $1,750,000 |
| D00000178 | Courtyard by Marriott, Jupiter, Florida | Kellogg & Kimsey, Inc. | $635,000 |
| D00000179 | Water Club on Snell Island | Kast Construction, LLC | $1,328,250 |
| D00000181 | Westin Jekyll Island | Pinkerton & Laws of Georgia, Inc. | $1,469,918 |
| D00000182 | Hyatt Place Columbia, | The Evergreen Corporation dba | $730,800 |

| | | | |
|---|---|---|---|
| | Columbia, South Carolina | Evergreen Construction | |
| D00000183 | Concord Orlando Courtyard, Florida | D&D Construction Services of Orlando, Inc. | $615,000 |
| D00000185 | Madeira Beach, Courtyard, Florida | D&D Construction Services of Orlando, Inc. | $494,990 |
| D00000186 | Hyatt House @ Downtown Atlanta, Georgia | The Evergreen Corporation dba Evergreen Construction | $978,000 |
| D00000187 | Residence Inn by Marriott – Ornage & 50 in Orlando | WELBRO Building Corporation | $996,200 |

**C. By reason of Allied's execution of the Bonds, on the Principal's behalf, in favor of Evergreen on the Hyatt House @ Downtown Atlanta project and in favor of Kellogg on the West End Hotel project, claims have been filed against Allied, and remain unresolved and are pending in litigation.**

A claim has been asserted against Allied in excess of $797,522 by reason of its execution of the Evergreen Bonds on the Principal's behalf.   This claim is now being litigated in three different forums.

On October 23, 2015, the Principal filed an Adversary Proceeding in the U.S. Bankruptcy Court, Middle District of Florida, case number 6:15-ap-00145-KSJ, for the purpose of liquidating Evergreen's claim and adjusting the creditor/debtor relationship between the Principal, Evergreen, and Allied. A cross claim was filed by Allied in the same adversary proceeding against Evergreen also for the purpose of liquidating Evergreen's claim.

On September 25, 2015, Evergreen issued a letter to Allied demanding payment of $797,522 for losses allegedly incurred by Evergreen on the Hyatt House project **(Exhibit C,**

**Evergreen letter to Allied)**. This letter was preceded by a similar demand made upon Progressive by Evergreen on August 21, 2015 for $729,799 **(Exhibit D, Evergreen letter to Progressive)**. Allied disagrees with Evergreen's demand, and pursuant to the Hyatt House subcontract, has challenged the demand by filing for arbitration before the American Arbitration Association in Atlanta on October 23, 2015.

On November 20, 2015, Evergreen filed a state court action in the Superior Court of Fulton County, Georgia, case number 2105CV268401 against Allied relating to the same demand for $797,522. The complaint sets forth a claim on the performance bond, breach of contract, tortious interference with a contractual relationship, attorneys' fees and statutory penalties. Contemporaneous with the complaint, Evergreen filed a motion to stay the arbitration, and separately, Allied filed a motion to stay the Georgia State Court proceeding. In light of the parties' disagreement over the proper forum for the dispute, the arbitration has been placed in abeyance until its status is determined in court.

The other project on which Allied is facing a substantial loss is West End, where Allied has already incurred losses and expects to incur additional losses in an amount exceeding $813,547.94. Just as with the Evergreen claim, this claim is also in litigation in different forums. Kellogg, the obligee, filed two cases in the Circuit Court for the Twelfth Judicial Circuit, Sarasota County, Florida, over this claim. The first lawsuit, case number 2015 CA 2631 NC, filed on or about May 20, 2015, names the Principal as defendant and alleges one count for breach of contract; this suit has now been stayed following the bankruptcy petition filed by the Principal on August 24, 2015. The second lawsuit, case number 2015 CA 2804 NC, was filed on or about May 21, 2015, against both the Principal (now stayed) and Allied for breach of bond.

In Tennessee, where the West End project is located, the Principal filed suit on June 11, 2015 against Kellogg and the project owners, Concord Hospitality, Inc, and Ace Hospitality, Inc. in the Chancery Court for the State of Tennessee, Twentieth Judicial District, Davidson County, case number 15-699-I, for breach of contract, unjust enrichment, prompt pay act violation, and a lien enforcement claim. On August 8, 2015, in the same Tennessee action, Allied filed a motion to intervene and an intervenor complaint seeking payment of any funds that may be owing to Progressive under the West End contract based on Allied's superior interest in the contract funds, which arises from losses incurred by Allied in fulfilling its obligations under the Bonds on behalf of the Principal, and Allied's legal and equitable right to be indemnified for its losses.

Both Evergreen's claim and Kellogg's claim against Allied remain unresolved and are currently pending in litigation. Allied has incurred, and continues to incur, losses and expenses, including attorneys' fees, in relation to these claims against Allied, for which Allied seeks indemnification in this litigation.

> **D. Despite Allied's demands, the Indemnitors have breached the Agreement of Indemnity by refusing to deposit collateral security in an amount sufficient to discharge the claims that have been asserted against Allied in the Florida and Georgia litigation.**

Pursuant to its rights under the Agreement of Indemnity, Allied demanded that the Indemnitors deposit cash or certified funds to be held by Allied as collateral security in the amount of $750,000 in relation to Allied's potential liability on the bonded contracts in a letter of August 6, 2015 **(Exhibit E, Allied collateral demand letter and Exhibit B, Keating Affidavit, ¶ 5)**. Despite Allied's demand, the Indemnitors have refused to pay Allied an amount sufficient to discharge the Evergreen and Kellogg claims against Allied in the pending litigation **(Exhibit B, Keating Affidavit, ¶ 6).**

Accordingly, Allied's Complaint seeks, *inter alia*, specific performance of the Indemnitors' joint and several obligation to deposit collateral security in an amount sufficient to discharge the Evergreen and Kellogg claims against Allied.  Through this Motion, Allied seeks a preliminary injunction compelling the Indemnitors to deposit collateral security with Allied in the amount of $1,611,069.94, which equals the principal amount of Evergreen and Kellogg's claims against Allied, so that Allied will possess the collateral security it bargained for pending the resolution of these claims.

The demand for collateral in this motion is for loss exposure separate and distinct from a prior loss of $752,107.33 that was liquidated and memorialized in a promissory note secured by two mortgages.  Allied does not seek any relief from the Court regarding the prior loss, and such prior loss does not merge with the loss exposure for which Allied now seeks protection.  The Agreement of Indemnity remains in full force and effect.

## III.   STANDARD FOR PRELIMINARY INJUNCTION

Fed. R. Civ. P. 65 authorizes this Honorable Court to issue a preliminary injunction in the present case.  The United States Court of Appeals for the Eleventh Circuit has explained:

> Under the familiar four-part test, a preliminary injunction is warranted if the movant demonstrates "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is issued, and (4) an injunction would not disserve the public interest.

*Odebrecht Constr. V. Sec'y, Fla. DOT*, 715 F.3d 1268, 1273-74 (11th Cir. 2013)(citing *Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011)).  These four factors are merely considerations to be balanced, as opposed to rigid prerequisites to the issuance of a preliminary injunction.  *Hamad v.*

*Woodcrest Condo. Ass'n*, 328 F.3d 224, 228 (6th Cir. 2003).   As explained below, these considerations warrant the issuance of a preliminary injunction in the present case.

IV.   **LAW AND ARGUMENT**

   A. **Allied will likely succeed on the merits of its claim for specific performance of the collateral security provision contained in the Agreement of Indemnity because it possesses no adequate remedy at law.**

The clear and unambiguous collateral security provision expressly requires the Indemnitors to pay to Allied, upon demand, an amount sufficient to discharge the claims that Evergreen and Kellogg have asserted against Allied — to be used by Allied to pay such claims or to be held by Allied as collateral security against loss – and this right is enforceable by specific performance.   The collateral security and specific performance provisions are to be evaluated under New York law because the Agreement of Indemnity's choice of law provision dictates that the laws of New York will govern and construe the Agreement of Indemnity. Under New York law, both provisions are enforceable.   Even in the absence of a contractual provision for specific performance, the collateral security provision is specifically enforceable under New York case law, Florida law, and any other law that could conceivably apply.

   1. **The collateral security provision is specifically enforceable under the law of New York, which governs the Agreement of Indemnity.**

In the Agreement of Indemnity, the Indemnitors agreed "to deposit with the Surety as collateral, by the Due Date and after receipt of the Surety's written demand, the sum equal to an amount determined by the Surety, to cover liability for Loss covered by Section 3.2, as determined by the Surety[,]" and the Indemnitors acknowledged that enforcement of this provision was by specific performance:

> the failure to deposit with the Surety, by the Due Date, the sum demanded by the Surety as collateral security will cause the Surety irreparable harm for which the Surety has no adequate remedy at law. Indemnitors agree that the Surety will be entitled to injunctive relief for specific performance of the Indemnitors' obligation to deposit with the Surety the sum demanded as collateral security and hereby waive any claims or defenses to the contrary and the posting of any bonds by the Surety in connection therewith.

Under the Agreement of Indemnity, it is stated that "[t]his Agreement will be governed by and construed in accordance with the law of the State of New York without regard to conflict of laws principles." The "[c]ourts in New York have routinely upheld the validity of collateral security clauses and enforced their terms" and that "[w]here liability had not yet been determined but claims were expected, the surety had no legal remedy under that provision for an indemnification award, but it did have an equitable remedy for specific performance of the collateral security provision." *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 922-23 (E.D.N.Y. 1999)(quoting *Amer. Motorists, Inc. Co. v United Furnace Co*., 876 F.2d 293, 300 (2d Cir. 1989); *BIB Constr. Co. v. Fireman's Ins. Co*., 214 A.D.2d 521, 523 (N.Y. App. Div. 1995)(holding that "[t]he obligation to make the [collateral] deposit is subject to enforcement by specific performance: The damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate *. . . .*" )(internal quotations omitted).

In *J. United Elec. Contracting Corp*, the defendant company requested that USF&G, the surety, issue bonds on its behalf. *Id*. at 918. As condition to the issuance of the bonds, USF&G required the defendant company, the company's president, and president's wife to sign a master surety agreement requiring the indemnitors to indemnify the surety for losses, costs, and expenses incurred by USF&G and to provide collateral whenever the surety faces liability. *Id*. at 919.  In reliance on the master surety agreement, the surety issued three bonds on behalf of the Principal. *Id*. After J United defaulted under all three bonds, obligees on two of the three bonds requested the surety to complete the project under the performance bond *Id*. at 920.  The surety was also obligated to perform under the payment bond after J. United failed to pay subcontractors, laborers or suppliers on all three projects.   *Id*. The surety paid losses of $1,302,308 and expenses of $73,323 and after estimating that total exposure would be $1,463,419, the surety demanded that the indemnitors deposit $1,500,000 as required by the collateral deposit provision of the master surety agreement. *Id*. The surety made subsequent demands for reimbursement and collateralization but all such demands were ignored. *Id*. at 920-21.

In *J. United Elec. Contracting Corp*., there was no specific performance clause in the master surety agreement, as there is in the present matter before this Court; therefore, the court determined that the surety was entitled to specific performance of the collateral security provision by applying a four-prong test: (1) existence of a valid contract, (2) surety substantially performed under the contract and is willing and able to continue performing, (3) indemnitor is able to perform its obligations, and (4) surety has no adequate remedy at law. *Id*. at 921.  In holding that the master surety agreement was valid, the court underscored that "Courts in New

York have routinely upheld the validity of collateral security clauses and enforced their terms." *Id*. at 922.

The court also found that it was clear that the surety performed under the master surety agreement by issuing bonds and then subsequently by making payments to subcontractors on all three of the projects and performing under two of the projects. *Id*. The court then found that the defendant had sufficient assets to meet at least some of their obligation.  *Id*.  Lastly, the court held that the surety demonstrated there was no adequate legal remedy noting that the Second Circuit has recognized that "where liability had not yet been determined but claims were expected, the surety had no legal remedy under that provision for an indemnification award, but it did have an equitable remedy for specific performance of the collateral security provision." *Id*. at 923.

As evidenced by the Court's rationale in *J. United Elec. Contracting Corp*., Allied will be entitled to specific performance of the collateral security provision contained in the Agreement of Indemnity under New York law.  The collateral security provision clearly and unambiguously requires the Indemnitors to pay Allied, upon demand, an amount sufficient to discharge any claim that has been asserted against Allied by reason of its execution of the Bonds.  The collateral security provision also clearly and unambiguously grants Allied the right to use that sum to pay any such claims or to hold that sum as collateral security against loss.

Enforcement of the collateral security provision via specific performance is clearly established in the Agreement of Indemnity, but even if no such contractual provision existed, Allied clearly met the four-prong test under New York law for granting specific performance. For the first prong, the Agreement of Indemnity is a valid contract entered into between Allied, the Principal, and the other Indemnitors. In satisfaction of the second prong, Allied substantially

performed under the Agreement of Indemnity by issuing bonds on all nine projects and by making payments to subcontractors, laborers, or suppliers under the Hyatt House and West End payment bonds.   Depending upon the course of litigation, Allied may have to continue performing under the Hyatt House performance bond and the West End payment bond if Allied is required to make further payments under those bonds.

As for the third prong, the Indemnitors are more than capable of posting collateral based upon representations in the Lawsons' personal financial statement dated February 28, 2015: the value of real property (other than homestead) is $1,529,000; the value of shares held in closely-held corporations is $1,610,000 (minus the value of debtor Gracious Living Design Center, an indemnitor in bankruptcy); and the value of other assets such as vehicles, jewelry and other collectibles is $405,000.   The aggregate value of property, or its cash equivalent, available to post as collateral is clearly sufficient to cover the Surety's collateral demand for $1.5 million. And as for the fourth prong, by virtue of the pending litigation over the amount of the Evergreen and Kellogg claims, Allied has no remedy available at law.

The Evergreen and Kellogg claims, which are both mired in litigation and unresolved, exceed $1 million.   Despite Allied's repeated demands that they do so, the Indemnitors have refused to deposit any collateral security with Allied.   More importantly, Allied's loss of its right to collateralization cannot be adequately remedied through monetary damages.   Accordingly, regardless of whether the Indemnitors possess any defenses to Evergreen and Kellogg's claims against the Bonds, Allied is entitled to a decree of specific performance of the collateral security provision under New York law.

**3.  Courts throughout the United States have held that similar collateral security provisions are specifically enforceable.**

CASE NO. 6:15-CV-1397-RDB-TBS

Not only is the collateral security provisions specifically enforceable under New York law, but courts throughout the United States including Florida have held that similar collateral security provisions are specifically enforceable.[2]   Consequently, even if the Indemnitors assert that the interpretation and/or enforcement of the Agreement of Indemnity would be governed by the law of a state other than New York, Allied will likely succeed on the merits of its claim for specific performance of the collateral security provision.

---

[2]  *See, e.g., Liberty Mut. Ins. Co. v. Aventura Eng'g Constr. Corp*., 534 F. Supp. 2d 1290 (S.D. Fla. 2008)(holding that collateral security provisions are enforceable under Florida law); *Transamerica Premium Ins. Co. v. Calvary Constr. Inc*., 552 So. 2d 225, 226-27 (Fla. Ct. App. 1989)(explaining that collateral security provisions are generally enforceable through equity); *Allied Ins. Co. of Am. v. Criterion Investment Corp*., 732 F. Supp. 834, 836 (E.D. Tenn. 1989)(requiring the indemnitors to pay to the surety "an amount sufficient to discharge any claim made against [the] surety on any . . . bond."); *Allied Ins. Co. of Am. v. Schwab*, 739 F.2d 431 (9th Cir. 1984) (stating that "sureties are ordinarily entitled to specific performance of collateral security clauses" and that "[i]f a creditor is to have the security position for which it bargained, the promise to maintain the security must be specifically enforced"); *Milwaukee Constr. Co. v. Glens Falls Ins. Co*., 367 F.2d 964 (9th Cir. 1966) (explaining that the legal remedy of money damages was not adequate and specific performance was available to require the indemnitors to deposit with surety money or acceptable security equal to established reserves"); *Hartford Cas. Ins. Co. v. Cal-Tran Assoc*., 2008 WL 4165483 (D.N.J. Sep. 4, 2008) (granting specific performance because "[t]he damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate"); *Fid. & Dep. Co. of Md. v. D.M. Ward Constr. Co*., 2008 WL 2761314 (D. Kan. July 14, 2008) (reasoning that "[w]en a surety has demanded that a principal post collateral security and the principal refused, the legal remedy of damages is not adequate"); *Int'l Fid. Ins. Co. v. Anchor Envtl., Inc.,* 2008 WL 1931004 (E.D. Pa. May 1, 2008) (noting that collateral security provisions are specifically enforceable under Pennsylvania law); *U.S. Fid. & Guar. Co. v. Stanley Contracting, Inc*., 303 F. Supp. 2d 1169 (D. Or. 2004) (granting specific performance and requiring indemnitors to post security in order to protect the surety from future losses); *U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, (M.D. Pa. 1998) (explaining that courts have granted specific performance of collateral security provisions to protect surety's bargained for rights of pre-loss protections); *Ticor Title Ins. Co. v. Middle Street Office Tower A Assoc*., 768 F. Supp. 390 (D. Me. 1991) (stating that it is "clear that specific performance is available as a remedy for breach of an indemnity agreement when it is in the nature of a collateral security agreement"); *United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929 (E.D. Pa. 1967) (explaining that legal remedy for subsequent damages will not suffice when indemnitor refuses to voluntarily comply with surety's demands for collateral); *Jhala v. Patel*, 154 S.W.3d 12 (Mo. Ct. App. 2004) (explaining that money damages is not an adequate remedy for failure to post collateral);

**B. Allied will suffer irreparable harm if the Indemnitors are not compelled to deposit collateral security with Allied in an amount sufficient to discharge Evergreen and Kellogg's claims against Allied.**

Not only will Allied likely succeed on the merits of its claim for specific performance, but Allied will also suffer irreparable harm if the Indemnitors are not compelled to deposit collateral security in an amount sufficient to discharge Evergreen and Kellogg's claims against Allied.  In fact, courts throughout the United States have held that sureties suffer irreparable harm if they are denied receipt of collateral security pending the resolution of claims that have been asserted against them.

The United States District Court for the Eastern District of New York has recognized that the injury to a surety resulting from the breach of a collateral security provision is immediate because the surety "risk[s] being deprived of bargained-for collateral and becoming a general unsecured creditor . . . ."  *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 923 (E.D.N.Y. 1999).  The United States Court of Appeals for the Second Circuit has also noted that "[h]aving bargained for collateral security and having failed to receive it, [a surety's] injury is real and immediate."  *Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 (2d Cir. 1989).  Another court long ago declared:

> The very purpose of [the collateral security provision] is to entitle [the surety], the moment danger of possible future liability appears, to security against any loss [the surety] may subsequently sustain if such liability matures, and to save [the surety] from being in the position of a general creditor of defendants, on a parity with their other creditors. The inadequacy of the legal remedy is obvious.

*Nat'l Sur. Corp. v. Titan Constr. Corp.*, 26 N.Y.S.2d 227, 230 (N.Y. App. Div. 1940).

The United States District Court for the Eastern District of Pennsylvania has explained:

> By providing bonds to the principal, the surety is exposed to risks of claims against the bonds, and [the surety] here is potentially liable for the claims and the

penal sums of its bonds.  The collateral security provision here is a measure of protection against such risks.  Unlike a claim for damages, the collateral security is merely a trust fund to be held by the surety and must be repaid to the principal in the event that damages are reduced or not awarded.  If [the surety] is deprived of the bargained-for collateral security, it will face the risk of being a general unsecured creditor of [the indemnitors] and of not being able to collect.  **To protect [the surety] from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted. [An indemnitors] argues that [the surety] will not be irreparably harmed, and that this court should delay an obvious ruling, because [the surety's] assets are great.  This argument carries no weight.**

*Int'l Fid. Ins. Co .v.  Anchor Envtl., Inc*., 2008 WL 1931004, *7 (E.D. Pa. May 1, 2008) (internal citations omitted) (emphasis added); *BIB Constr., Inc. v. Fireman's Ins. Co. of Newark, N.J.*, 214 A.D.2d 521 (N.Y. App. Div. 1995)(holding that "damages resulting from failure to give security is not ascertainable, and the legal remedy is therefore inadequate.")

As dictated by these principles, Allied's lack of collateral security constitutes an immediate and irreparable injury, and only a preliminary injunction compelling the Indemnitors to deposit collateral security with Allied can eliminate that injury.  The collateral security provision, by its very nature, requires prejudgment relief and enforcement to have any value. The objectives of the collateral security provision include (1) insuring that Allied is fully collateralized BEFORE it sustains a loss under the Bonds, (2) protecting Allied from any loss that may otherwise result from the Indemnitors' insolvency and/or dissipation of assets during the pendency of Evergreen's and Kellogg's claims against Allied, (3) motivating the Indemnitors to promptly resolve Evergreen's and Kellogg's claims, and (4) creating a fund from which Allied may resolve Evergreen and Kellogg's claims in the event that Allied chooses to exercise its exclusive right to determine whether those claims should be paid and/or compromised, on the basis of liability, expediency, or otherwise.  Absent the issuance of a preliminary injunction,

NONE of these bargained-for objectives will be achieved, which will result in an immediate and irreparable harm to Allied.

### C. Compelling the Indemnitors to deposit collateral security with Allied will not cause substantial harm to others.

Allied does not possess any information indicating that the issuance of a preliminary injunction compelling the Indemnitors to deposit collateral security will cause substantial harm to the Indemnitors or others.  To the contrary, by compelling the Indemnitors to deposit collateral security with Allied, this Honorable Court would merely be requiring the Indemnitors to perform a task that they are contractually obligated to perform.  The United States District Court for the Eastern District of Pennsylvania has described this issue as follows:

> [T]he court finds that [the indemnitors] will not suffer irreparable harm if the injunction is issued.  [An indemnitor] argues that he will face the greater harm because he would be forced to sell a restaurant in which he has ownership interests.  Although the court is sympathetic to [the indemnitor's] financial difficulties, it must reject his argument.  **The issuance of an injunction will only require Defendants to do that to which they agreed — to place [the surety] in funds — and will only permit [the surety] to retain the funds until the rights of [the surety], [the indemnitors], and [the obligee] can be determined.  [The indemnitors] are not unfairly prejudiced by being held to the Agreement of Indemnity to which they were signatories.**

*Int'l Fid. Ins. Co.*, 2008 WL 1931004 at *7 (emphasis added).  To the extent the deposit of collateral security may cause financial hardship to the Indemnitors, that financial hardship is exactly the type of risk the Indemnitors assumed the moment they executed the Agreement of Indemnity as an inducement of Allied's issuance of surety bonds on the Principal's behalf.

**D. Compelling the Indemnitors to deposit collateral security with Allied would further the public interests of enforcing the clear and unambiguous terms of the Agreement of Indemnity and instilling confidence in the surety industry.**

Finally, the issuance of a preliminary injunction in the present case will further the public interests of enforcing the clear and unambiguous terms of the Agreement of Indemnity and instilling confidence in the surety industry.  The United States District Court for the District of Pennsylvania described these important public interests as follows:

> **[T]he court finds that the issuance of a preliminary injunction furthers the public interest by recognizing and enforcing the plain language of a binding surety indemnification agreement**.  It is undisputed that [the principal] is a public works contractor and that the performance and payment bonds at issue are public works bonds for a project in Pennsylvania, as required by [Pennsylvania law].  Pennsylvania has an important interest in seeing that the contractors on public works projects use contract funds to perform the work and pay subcontractors and suppliers, as well as adhere to the performance and payment provisions of the contracts and the Pennsylvania Procurement Code . . . . **The grant of a preliminary injunction vindicates this interest and encourages confidence in the surety bond process**.

*Int'l Fid. Ins. Co.*, 2008 WL 1931004 at *7 (emphasis added).

Similarly, by compelling the Indemnitors' to perform their contractual obligation to deposit collateral security with Allied, this Honorable Court will further the public interest in enforcing the clear and unambiguous terms of the Agreement of Indemnity.  States share a public interest in insuring that contracts are enforced according to their terms, and that interest will be furthered upon Allied's receipt of that for which it bargained — collateral security in an amount sufficient to discharge Evergreen and Kellogg's claims against Allied.

The issuance of a preliminary injunction will also foster confidence in the surety industry.  Courts throughout the United States have recognized the vital role that sureties play in the construction industry.  A leading commentator has explained, "Construction bonds issued by compensated sureties for more than a century have brought a measure of financial stability to an

endemically undercapitalized construction industry exposed to enormous business risks, any one of which could seriously impact the successful completion of the contract and financial solvency of all involved." 4 *Bruner & O'Connor on Construction Law* § 12:1 (2007).  Accordingly, surety bonds are required on most public projects conducted by states and/or the federal government, and surety bonds are prevalent on private projects as well.  Based upon the vital role sureties play in the construction industry, the issuance of a preliminary injunction in the present case will foster confidence in the surety industry by demonstrating that a surety's bargained-for right to receive collateral security is more than an empty promise in this jurisdiction.

WHEREFORE, Allied World Specialty Insurance Company respectfully moves this Honorable Court to issue a preliminary injunction compelling the Indemnitors, jointly and severally, to deposit collateral security with Allied in an amount sufficient to discharge Evergreen's and Kellogg's claims, which, at a minimum, currently equals $1,611,069.94. Allied requests a hearing on this motion.

Dated:  December 30, 2015

<div style="margin-left:50%">

Respectfully submitted,

*/s/Jonathan P. Cohen*
Jonathan P. Cohen
Florida Bar No.: 11526
**Jonathan P. Cohen, P.A.**
500 E. Broward Blvd.
Suite 1710
Fort Lauderdale, FL 33394
(954) 462-8850
(954) 848-2987 -fax
jcohen@jcohenpa.com
service@jcohenpa.com

</div>

CASE NO. 6:15-CV-1397-RDB-TBS

**Attorneys for Plaintiff**
**Allied World Specialty Insurance**
**Company**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by U.S. Mail

on the 30th day of December 2015 to William E. Lawson, 1803 Rosewood Dr., Clermont, Florida

34711, Charlene H. Lawson, 1803 Rosewood Dr., Clermont, Florida 34711, Lawson Investment

Group, C/O William E. Lawson,1803 Rosewood Dr., Clermont, Florida 34711, and Central

Florida Plumbing Supply, Inc. A/K/A Central Florida Supply, Inc., C/O William E.

Lawson,1803 Rosewood Dr., Clermont, Florida 34711.

*/s/Jonathan P. Cohen*
Jonathan P. Cohen