**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ALLIED WORLD SPECIALITY
INSURANCE COMPANY,

    Plaintiff,

v.                                          Case No. 6:15-cv-1397-Orl-37TBS

LAWSON INVESTMENT GROUP, INC.;
CENTRAL FLORIDA PLUMBING
SUPPLY, INC.; WILLIAM E. LAWSON;
and CHARLENE H. LAWSON,

    Defendants.

**ORDER GRANTING PRELIMINARY INJUNCTION**

This cause is before the Court on the following:

1. Plaintiff Allied World Specialty Insurance Company's Motion for Preliminary Injunction, Incorporated Memorandum of Law and Request for Hearing (Doc. 32), filed December 30, 2015;

2. Defendants' Opposition to Plaintiff Allied World Specialty Insurance Company's Motion for Preliminary Injunction, Incorporated Memorandum of Law and Request for Hearing (Doc. 45), filed January 18, 2016; and

3. Plaintiff Allied World Specialty Insurance Company's Reply to Objection to Motion for Preliminary Injunction (Doc. 51), filed February 3, 2016.

Plaintiff—Allied World Specialty Insurance Company[1]—seeks a preliminary injunction compelling Lawson Investment Group, Inc., Central Florida Plumbing Supply, Inc., William E. Lawson, and Charlene H. Lawson (the "**Non-Debtor Indemnitors**") to

---

[1] Formerly known as Darwin National Assurance Company. (Doc. 32-2, ¶ 2.)

deposit collateral with Plaintiff in the amount of $1,611,069.94 pursuant to the terms of an indemnity agreement. (Doc. 32 ("**P.I. Motion**").) Upon consideration, the Court finds that the Motion is due to be granted for the reasons set forth below.[2]

## BACKGROUND

Plaintiff is a corporation that is "authorized and qualified to conduct surety business" (Doc. 21, ¶ 4), and former defendant Progressive Plumbing, Inc. ("**PPI**") is a commercial plumbing contractor. (Doc. 47, p. 14.) In March 2013, PPI, Progressive Services, LLC, Gracious Living Design Center, Inc., Lawson Investment Group, Inc., Central Florida Plumbing Supply, Inc., William E. Lawson, and Charlene H. Lawson (collectively, "**Indemnitors**") executed an Agreement of Indemnity ("**Agreement**"), under which Plaintiff was the surety. (Doc. 32-2, ¶ 4; Doc. 32-1.)

As intended by the Indemnitors, Plaintiff subsequently issued performance bonds and labor and material payment bonds ("**Bonds**") on nine construction projects for which PPI was the bond principal. (Doc. 32-2, ¶ 4.) Central to the current proceedings are the bonds issued in favor of: (1) Kellog & Kimsey, Inc. ("**Kellog**"), on a project titled 1800 West End Hotel & MX Development, 1800 West End Ave., Nashville, TN 37203 ("**West End Project**"); and (2) The Evergreen Corporation ("**Evergreen**"), on a project titled Hyatt Place Columbia, SC ("**Hyatt Place Project**") (collectively, "**Bonds at Issue**"). (*Id.*, ¶¶ 4a, 4e, 7.)

In the Agreement, the Indemnitors jointly and severally agreed to "indemnify and hold [Plaintiff] harmless from and against any and all liability for any and all Loss."

---

[2] The factual findings and conclusions of law in this Order are not controlling for any later purposes, including a permanent injunction or trial. *See E. Remy Martin & Co. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1528 n.1 (11th Cir. 1985).

2

(Doc. 32-1, p. 4, § 3.2). The Agreement also contains a paragraph titled "Deposit of Funds" that memorializes the Indemnitors' agreement to "deposit with [Plaintiff] as collateral . . . after receipt of [Plaintiff's] written demand, the sum equal to an amount determined by [Plaintiff], to cover liability for Loss." (*Id.* at 4, § 3.3 ("**Collateral Deposit Provision**").) The Agreement defines "Loss" as "the underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees[,] . . . interest and expenses of every nature" that Plaintiff incurs in connection with the Bonds or the Agreement. (*Id.* at 3.) Additionally, "Claim" is defined "any claim, notice of default, notice of termination, demand for payment, suit, or any other form of notice or claim or demand that [Plaintiff] receives in connection with any Bond." (*Id.*)

Plaintiff represents that: (1) PPI began performance on each of its bonded construction projects, but was unable to continue and defaulted on its obligations under the Bonds (Doc. 21, ¶ 18); (2) several entities asserted claims for performance and payment against Plaintiff pursuant to the terms of the Bonds (*id.* ¶ 19); and (3) it has paid several claims and incurred losses for which the Non-Debtor Indemnitors are responsible under the Agreement (*id.* ¶ 21; *see also* Doc. 32-5).

Specific to the Bonds at Issue, Plaintiff conducted an exposure analysis on the West End and Hyatt Place Projects. (Doc. 32-2, ¶ 5; Doc. 32-5.) Based on Plaintiff's estimate of its loss exposure, on August 6, 2015, Plaintiff sent a demand letter to William E. Lawson and Charlene H. Lawson (collectively, "**the Lawsons**")[3] demanding collateral security in the amount of $750,000, pursuant to the Collateral Deposit Provision ("**August**

---

[3] The Lawsons are the owners of Lawson Investment Group, Inc., Central Florida Plumbing Supply, Inc., and PPI. (Doc. 47, p. 14.)

3

**2015 Demand**"). (Doc. 32-2, ¶ 5; Doc. 32-5.) Neither the Lawsons nor any of the Non-Debtor Indemnitors responded or posted the collateral demanded. (Doc. 32-2, ¶ 6.) Consequently, Plaintiff initiated the instant lawsuit. (Doc. 1.) The Amended Complaint asserts claims against the Non-Debtor Indemnitors for breach of indemnity agreement, specific performance, quia timet, and breach of promissory note.[4] (Doc. 21.)

Plaintiff now moves for a preliminary injunction compelling the Non-Debtor Indemnitors to deposit collateral security with Plaintiff in the amount of **$1,611,069.94** ("**Requested Collateral**")—the sum of two claims submitted to Plaintiff by Evergreen and Kellog.[5] (Doc. 32 ("**P.I. Motion**")). The Non-Debtor Indemnitors responded (Doc. 45 ("**Response**"), Plaintiff replied (Doc. 51 ("**Reply**"), and the parties presented oral argument at a hearing held on Wednesday, February 10, 2016 ("**Hearing**") (Doc. 61). As such, the matter is ripe for the Court's adjudication.

## STANDARDS

Federal Rule of Civil Procedure 65 authorizes the Court to enter a preliminary injunction. To prevail on its request for injunctive relief, Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not issued ("**Irreparable Injury**"); (3) that the threatened injury to Plaintiff outweighs the

---

[4] Plaintiff originally named all seven Indemnitors as defendants in the instant action (*see* Doc. 1); however, upon receiving notification that PPI, Progressive Plumbing Services, LLC, and Gracious Living Design Center ("**Debtors**") had filed for Chapter 11 bankruptcy (Doc. 10), the action was stayed as to the Debtors. (Doc. 11.) The Debtors were later terminated as parties after Plaintiff filed an Amended Complaint naming only the Non-Debtor Indemnitors as defendants. (*See* Doc. 21.)

[5] On September 25, 2015, Plaintiff received a written demand for payment from Evergreen for $797,522. ("**Evergreen Claim**"). (Doc. 32-2, ¶ 9; Doc. 32-3.) Plaintiff also received a claim from Kellog in the amount of $813,547.94 ("**Kellog Claim**") (Doc. 32-2, ¶ 9.) Both the Evergreen and Kellog Claims are currently in litigation. (*Id.* ¶ 6.)

potential damage that the proposed injunction may cause Defendants ("**Balance of Hardships**"); and (4) that the injunction, if issued, will not be adverse to the public interest ("**Public Interest**"). *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1240 (11th Cir. 2005). Plaintiff—as the movant—bears the burden of clearly establishing these requirements. *Id.*

While a preliminary injunction is "an extraordinary and drastic remedy" that should only be granted if the movant clearly establishes all four elements, *see McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998), the Court does not have to find that "evidence positively guarantees a final verdict in plaintiff's favor," *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). In reaching its determination, the Court may consider "affidavits and hearsay materials which would not be admissible evidence for a permanent injunction." *Id.*

## DISCUSSION

In its P.I. Motion, Plaintiff requests injunctive relief pursuant to Count II of the Amended Complaint (Doc. 21, p. 11), in which Plaintiff seeks specific performance of the Collateral Deposit Provision. (Doc. 32, p. 13.) After analyzing the traditional preliminary injunction factors, the Court finds that Plaintiff has established all four requirements and the P.I. Motion is due to be granted.

**I.    Substantial Likelihood of Success on the Merits**

Under New York law, Plaintiff has established a likelihood of success on the merits of its claim for specific performance of the Collateral Deposit Provision.[6] New York courts

---

[6] The Court applies New York law in accordance with the Agreement's choice-of-law provision. (Doc. 32-1, p. 10, § 7.8.)

5

routinely award sureties specific performance of similar collateral security provisions where the terms of the provision are clear and unambiguous. *E.g.*, *Safeco Ins. Co. of Am. v. Hirani/MES, JV.*, 480 F. App'x 606, 608 (2d Cir. 2012); *Travelers Cas. & Sur. Co. v. Dale*, 542 F. Supp. 2d 260, 264 (S.D.N.Y. 2008); *Am. Home Assur. Co. v. Peter Gun, Inc.*, No. 98 Civ. 6970, 1999 WL 672569, at *2 (S.D.N.Y. Aug. 26, 1999*)*; *Am. Motorists Ins. Co. v. Pa. Beads Corp.*, 983 F. Supp. 437, 439–40 (S.D.N.Y. 1997); *see also Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 299–300 (2d Cir. 1989) (reversing the district court's dismissal based on its finding that the unambiguous contract provision gave the surety a cause of action for collateral security).

Here, the Collateral Deposit Provision unambiguously provides that the Indemnitors agreed to "deposit with [Plaintiff] as collateral . . . after receipt of [Plaintiff's] written demand, the sum equal to an amount determined by [Plaintiff], to cover liability for Loss." (*Id.* at 4, § 3.3.) It is undisputed that the Non-Debtor Indemnitors failed deposit the requested collateral after Plaintiff received the August 2015 Demand. (Doc. 32-2, ¶¶ 5, 6; Doc. 32-5.) The consensus of federal decisions applying New York law to similar contractual provisions demonstrates that this is all that is required to enforce the Collateral Deposit Provision.[7] Plaintiff has, therefore, demonstrated a likelihood of success on the merits of Count II.

The Non-Debtor Indemnitors' arguments to the contrary are not well taken. In particular, the Court disagrees that Plaintiff must prove that the Non-Debtor Indemnitors are able to pay the Requested Collateral and rejects their suggestion that their inability to

---

[7] *E.g.*, *Safeco*, 480 F. App'x at 608; *Dale*, 542 F. Supp. 2d at 264; *Peter Gun, Inc.*, 1999 WL 672569, at *2; *Pa. Beads Corp.*, 983 F. Supp. at 439–40; *see also United Furnace Co.*, 876 F.2d at 299–300.

perform the Collateral Deposit Provision is a viable defense to Plaintiff's P.I. Motion. (Doc. 45, p. 9–10.) The Court agrees with the Southern District of New York that the financial hardship of an indemnitor—though unfortunate—does not "provide a valid justification for denying [P]laintiff access to the security it specifically bargained for." *Pa. Beads Corp.*, 983 F. Supp. at 441. Indeed, absent enforcement of the Collateral Deposit Provision, Plaintiff will essentially be relegated to the status of an unsecured creditor—the "precise situation which [Plaintiff] sought to avoid in bargaining for the [Collateral Deposit Provision]." *Id.* As such, the Non-Debtor Indemnitors' inability-to-pay defense does not warrant denial of the P.I. Motion.[8]

## II.     Irreparable Injury

Second, Plaintiff has demonstrated that it will suffer irreparable harm if the Non-Debtor Indemnitors are not compelled to deposit the Requested Collateral. By way of the Agreement, the Non-Debtor Indemnitors explicitly acknowledged that the failure to deposit collateral with Plaintiff as demanded will cause Plaintiff irreparable harm for which it has no adequate remedy at law. (Doc. 31-1, p. 4, § 3.3(d).) Moreover, New York courts recognize that the injury to a surety following the breach of a collateral security provision is immediate and irreparable because the surety "risk[s] being deprived of bargained-for collateral and becoming a general unsecured creditor." *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 923 (E.D.N.Y. 1999); *see also United Furnace Co.*, 876 F.2d at 302 ("Having bargained for collateral security and having

---

[8] The Court also specifically rejects the Non-Debtor Indemnitors' defense of unclean hands. While issues of bad faith may be relevant to Plaintiff's claim for indemnification under the Agreement, they are not relevant to Plaintiff's contractual right to collateral security. *See Safeco*, 480 F. App'x at 608–609.

7

failed to receive it, [a surety's] injury is real and immediate.").

Finally, given that three of the Indemnitors have already filed for bankruptcy and the Non-Debtor Indemnitors are actively seeking protection from Plaintiff's claims in bankruptcy court (*see* Doc. 64), the Non-Debtor Indemnitors' assets may very well dissipate before resolution of the Evergreen and Kellog Claims. The Court, therefore, finds that Plaintiffs have met their burden under the Irreparable Injury factor.

## III.   Balance of Hardships

Next, the Court finds that the harm Plaintiff would suffer in the absence of a preliminary injunction outweighs any harm that the Non-Debtor Indemnitors may suffer if the requested injunction is issued. As previously mentioned, without the injunction, Plaintiff will lose the benefit of the Collateral Deposit Provision and be demoted to the position of an unsecured creditor. *Pa. Beads Corp.*, 983 F. Supp. at 441. On the other hand, although an injunction may subject the Non-Debtor Indemnitors to financial hardship, it will only obligate the Non-Debtor Indemnitors to do what they are contractually obligated to do. In the absence of any further argument, the balance of equities weigh in Plaintiff's favor, and Plaintiff has, therefore, met its burden under the Balance of Hardships factor.

## IV.   Public Interest

Finally, Plaintiff has established that a preliminary injunction will not disserve the public interest. Plaintiff maintains that "the issuance of a preliminary injunction in the present case will further the public interests of enforcing the clear and unambiguous terms of the Agreement . . . and instilling confidence in the surety industry." (Doc. 32, p. 22.) The Court agrees—requiring contracting parties to do what they have pledged

does not disserve the public interest. As the Non-Debtor Indemnitors do not present any argument to the contrary, Plaintiff has satisfied the Public Interest factor.

As a final matter, the Court rejects the Non-Debtor Indemnitors' argument that Plaintiff's current monetary demand is unreasonable because it almost doubles the August 2015 Demand. (*See* Doc. 45, pp. 13–15.) The increase is reasonable in light of the Evergreen and Kellog Claims received by Plaintiff following the August 2015 Demand. Such claims are evidenced by: (1) the affidavit of James A. Keating, who manages Plaintiff's surety claims department (Doc. 32-2); (2) documentation that Evergreen demanded Plaintiff pay it $797,522 (Doc. 32-3); and (3) a proof of claim documenting that Kellog demanded Plaintiff pay it $813,547.94 (*see* Claims Register in *In re Progressive Plumbing, Inc.*, 6:15-bk-7275-KSJ, Claim 35-1).[9] Under the Agreement, the Non-Debtor Indemnitors agreed to deposit collateral with Plaintiff to cover its "liability for Loss." (Doc. 32-1, p. 4, § 3.3.) Such "Loss" includes "the underlying dollar amount of all Claims," where "Claim" means "any claim," or "demand for payment," that Plaintiff receives in connection with any Bond.  (Doc. 32-1, pp. 3–4.) The Evergreen and Kellog Claims unquestionably fall within these defined terms. As such, the relevant inquiry is not whether the claims themselves are reasonable, but whether Plaintiff's demand is reasonable based on the claims that it has received. The Court concludes that it is.[10]

---

[9] As proposed by Plaintiff at the Hearing, the Court takes judicial notice of this proof of claim—not for the truth of the matter asserted therein, but solely to establish that Kellog has submitted a claim for $813,547.94. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.")

[10] The Court rejects the Non-Debtor Indemnitors' remaining arguments as unpersuasive.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff Allied World Specialty Insurance Company's Motion for Preliminary Injunction, Incorporated Memorandum of Law and Request for Hearing (Doc. 32) is **GRANTED**.

2. Plaintiff Allied World Specialty Insurance Company is entitled to **$1,611,069.94** in collateral security. Under the Agreement of Indemnity (Doc. 32-1), Defendants are jointly and severally liable for this amount.

3. On or before Monday, **February 29, 2016**, Defendants shall deposit **$1,611,069.94** in cash or certified funds with Plaintiff as collateral to cover Plaintiff's liability for Loss—specifically, the underlying dollar amount of the Evergreen and Kellog Claims that Plaintiff has received in connection with the Bonds at Issue.

4. In light of the hearing held on February 10, 2016 (*see* Doc. 61), the Clerk is **DIRECTED** to terminate Defendants' Request for Oral Argument (Doc. 45) as moot.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 22, 2016.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record